IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON AND ARCH SPECIALTY INSURANCE CO., | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:09-CV-01736-N |
| RALPH S. JANVEY, IN HIS CAPACITY AS COURT APPOINTED RECEIVER FOR STANFORD INTERNATIONAL BANK, LTD., ET AL., | § § § § § § § | |
| Defendant. | § | |

### RECEIVER'S RESPONSE TO UNDERWRITERS' MOTION FOR MEDIATED SETTLEMENT CONFERENCE AND BRIEF IN SUPPORT

Ralph S. Janvey, in his capacity as court appointed receiver for Stanford International Bank, Ltd., et al. (the "Receiver"), files this Response to Underwriters' Emergency Motion for Mediated Settlement Conference (the "Motion"):

#### SUMMARY

The Receiver respectfully submits that the Court should deny Underwriters' two emergency motions and thereby reject Underwriters' attempt to force a settlement to their liking through abuse of mediation confidentiality and efforts aimed to intimate and disrupt the Receiver and Official Stanford Investors Committee. The Receiver respectfully requests that the Court instead order the parties to report to the Court no later than March 31, 2016, whether they have reached a binding agreement. If the parties have not reached a binding agreement by March 31, 2016, the Receiver respectfully requests that the Court enter a scheduling order and place the

case on the trial docket. Underwriters may then take the mediation process more seriously, but if they do not, the Receiver is entitled to his day in Court.

### ARGUMENT

Underwriters' latest Motion is based on three easily identified false premises.

First, Underwriters' statement that "little or no progress" has been made in the parties' confidential settlement discussions is untrue. Although the Receiver cannot comment in detail on the progress of negotiations because they are confidential, the Receiver made available to Underwriters comprehensive draft settlement documents on January 26, 2016. If progress has been slower than Underwriters would like, Underwriters have only themselves to blame for interposing unnecessary and distracting litigation tactics into what should be a cooperative settlement negotiation.

Second, as explained in further detail in his response to Underwriters' Emergency Motion to Enforce Settlement Agreement, the parties do not have an enforceable settlement agreement, and the Receiver has never agreed in any negotiation with Underwriters' to release the Receiver's claims against Mr. Reynaud or any other person claiming to be an insured. Moreover, Underwriters fail to mention that Mr. Reynaud's claims for coverage against Underwriters had been dismissed by this Court with prejudice, pursuant to a settlement between Mr. Reynaud and Underwriters, by the time the alleged settlement agreement between Receiver and Underwriters allegedly arose. *See Reynaud and Haymon v. Certain Underwriters of Lloyd's of London*, Case No. 3:14-cv-03731, Doc. No. 56 (Nov. 13, 2015); *see also id.*, Doc. No. 54 (Nov. 11, 2015). Thus, Mr. Reynaud had released his claims for coverage under the insurance policies at the time of the alleged settlement between the Receiver and Underwriters, and he is therefore not subject to the alleged agreement, even as interpreted by Underwriters.

Third, the Receiver has never misrepresented to anybody the terms of any settlement with Underwriters. Indeed, as noted above, the Receiver has no settlement with Underwriters. Even if Underwriters were right, however, about every aspect of their imagined settlement with the Receiver, the entire agreement described by Underwriters is contingent on approval of a bar order, which of course would require notice and approval by the Court following a hearing. That has not happened. Thus, Underwriters' assertion that "claims against Mr. Reynaud *were* clearly and unambiguously *released*" (emphasis on the past tense added) is itself clearly and unambiguously false.

What is evident from the foregoing is that Underwriters are no longer acting in good faith. Not only did Underwriters opt almost immediately for filing the first emergency motion rather than engaging in a meaningful dialogue to attempt to resolve an obvious disagreement between the parties, but they filed the second emergency motion shortly after receiving settlement drafts that they had agreed to redline and return to the Receiver. Against the backdrop of all of that, Underwriters have gone out of their way to attempt to interfere with the Receiver's settlement negotiations with other parties, including but regrettably not limited to Mr. Reynaud. After some effort, the Receiver has been able to ensure the failure of at least one of those attempts. However, the Receiver and the Official Stanford Investors Committee have been forced to waste attorney time and resources addressing Underwriters' bad faith tactics.

The Court should reject Underwriters' attempt to reset the parties' settlement negotiations through the appointment of a Magistrate Judge. Underwriters have draft settlement documents they can revise and return to the Receiver. They have a mediator, who Underwriters originally selected, who stands ready to assist with the parties' negotiations. Thus, for now, a negotiated path remains open to Underwriters. There is no need to waste the Court's time, including the

time of a Magistrate Judge, by creating a new negotiation process at this stage. If there is a chance at a mediated settlement, the best course is to see the current mediated process through to conclusion.

The Receiver is not overly sanguine, however, about the prospects of completing a negotiated settlement. Underwriters apparently believe that the best way to negotiate a favorable settlement is to file baseless emergency motions flouting the confidentiality of the mediation process and to threaten to wipe out many hundreds of millions of dollars of claims against third parties in exchange for a one-time payment from Underwriters that is a fraction of what the Receiver could recover from Underwriters alone if he successfully litigates his claims against Underwriters to judgment. The Receiver is nevertheless willing to give settlement discussions a final opportunity if those discussions occur in an atmosphere free of the extortionate threats that characterize Underwriters' Emergency Motions.

## CONCLUSION

The Receiver respectfully requests that the Court:

1. Deny Underwriters' Emergency Motion for Mediated Settlement Conference [Doc. 142];

2. Deny Underwriters' Emergency Motion to Enforce Settlement [Doc. 134];

3. Enter an order requiring the parties to report back to the Court on their progress by March 31, 2016; and

4. Absent a binding agreement on March 31, 2016, enter a new scheduling order providing for the completion of discovery, including setting deadlines for the disclosure of expert opinions, and re-setting the case for trial.

Respectfully submitted,

/s/Kathryn A. Lewis
Michael J. Kuckelman KS #14587
Stephen J. Torline KS #18292
Kathryn A. Lewis KS #20690
KUCKELMAN TORLINE KIRKLAND & LEWIS, LLC
10740 Nall, STE 250
Overland Park, KS 66211
Phone: 913-948-8610
Fax: 913-948-8611
mkuckelman@ktklattorneys.com
storline@ktklattorneys.com
klewis@ktklattorneys.com
**ATTORNEYS FOR RECEIVER
RALPH S. JANVEY**

## **CERTIFICATE OF SERVICE**

      On February 23, 2016, I electronically submitted the foregoing document with the clerk of the court of the U. S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

                                              /s/Kathryn A. Lewis