IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § | Civil Action No. 3:09-CV-0298-N |
| STANFORD INTERNATIONAL BANK, LTD., *et al.*, | § § § | |
| Defendant. | § § § | |
| CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § | Civil Action No. 3:09-CV-1736-N |
| RALPH S. JANVEY, RECEIVER, *et al.*, | § § § | |
| Defendants. | § § | |
| CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § | Civil Action No. 3:13-CV-2226-N |
| PABLO M. ALVARADO, *et al*, | § § § | |
| Defendants. | § § | |
| CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § | Civil Action No. 3:15-CV-1997-N |
| PAUL D. WINTER, *et al*, | § § | |

MEMORANDUM OPINION AND ORDER – PAGE 1

|  | § |  |
|---|---|---|
| Defendants. | § | |
| CLAUDE F. REYNAUD, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:14-CV-3731-N |
| | § | |
| CERTAIN UNDERWRITERS AT | § | |
| LLOYD'S OF LONDON, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses the objections[1] to the motion to approve the amended settlement between Plaintiffs Ralph S. Janvey (the "Receiver") and the Official Stanford Investors Committee ("OSIC") and Defendants Certain Underwriters at Lloyd's of London, Arch Specialty Insurance Company, and Lexington Insurance Company (collectively "Underwriters"). The Motion concerns a settlement agreement among and between the Official Stanford Investors Committee, the Receiver (collectively, "Movants"), and Underwriters. The Court-appointed Examiner signed the agreement solely to evidence his support and approval of the agreement but is not otherwise individually a party to the Coverage Action or the Agreement. Because the amended settlement agreement is fair, reasonable, and adequately addresses the Fifth Circuit's opinion regarding the original settlement, the Court approves the amended settlement

---

[1] Docs. 3011, 3012 in *Sec. Exch. Comm'n v. Stanford Int'l Bank, Ltd.*, Case No. 3:09-CV-298-N (N.D. Tex.) (the "Receivership Action")

MEMORANDUM OPINION AND ORDER – PAGE 2

agreement.   The Court confirms its prior approval of payment of attorneys' fees to Movants' counsel.

## I. THE INSURANCE DISPUTE AND SETTLEMENT

Robert Allen Stanford's Ponzi scheme spawned extensive civil litigation, including the dispute over insurance proceeds underlying this proposed settlement.  The facts of Stanford's scheme are well established.  *See, e.g.*, *Janvey v. Democratic Senatorial Campaign Comm.*, 712 F.3d 185, 188–89 (5th Cir. 2013).  Essentially, Stanford's scheme entailed the sale of fraudulent certificates of deposit ("CDs") from an offshore bank located in Antigua known as Stanford International Bank Limited.  Although Stanford represented to investors that the CD Proceeds were invested only in low-risk, high-return funds, the proceeds were funneled into speculative private equity investments and used to fund Stanford's extravagant lifestyle.

The Court appointed the Receiver to take control of the various entities Stanford used to carry out his scheme.  Among other duties, the Court charged the Receiver with recovering assets and distributing them to Stanford's victims.  Those assets include the proceeds of the insurance policies at issue in this dispute.

The dispute over these proceeds began within months of the Receiver's appointment to take charge of the Stanford entities.  Underwriters issued three policies providing four types of insurance for the Stanford entities: (1) D & O coverage; (2) fidelity coverage; (3) professional indemnity coverage; and (4) excess wrap coverage (collectively, the "Policies").  The Receiver, on behalf of the insured Stanford entities, made claims against the Policies.  Underwriters denied those claims on the basis of various coverage exclusions.

MEMORANDUM OPINION AND ORDER – PAGE 3

Underwriters then sued the Receiver seeking a no-coverage declaratory judgment. The Receiver counterclaimed for breach of contract and other causes of action.

At the same time, the Receiver sued many of the Policies' insureds. Some of the defendants in those cases have made or may make claims against the Policies. To protect his claims to the Policies' proceeds, the Receiver has intervened or sought to intervene in these actions.

After several years, the Receiver, OSIC, the Court-appointed Examiner, and Underwriters reached an agreement for a global settlement of the dispute over the amount of the policy limits and the extent of coverage for claims arising from Underwriters' relationship with Stanford. The agreement requires Underwriters to make a $65 million payment to the Receivership Estate, which would be distributed through the Receiver's claims and distribution process. In exchange for the $65 million payment, Underwriters would obtain global peace related to Stanford claims by way of various releases, final judgment, and bar orders. Those bar orders would enjoin all Stanford-related claims against Underwriters. The Court approved the original agreement, concluding that it was "in all respects, fair, reasonable, and adequate." May 16, 2017 Order 7 (Doc. 2519, Receivership Action). The Fifth Circuit vacated the Court's approval and remanded the case for further proceedings. Specifically, the Fifth Circuit held that (1) the Court erred by abrogating Individual Underwriters' Insureds'[2] contractual claims to the policy proceeds

---

[2] The term "Individual Underwriters' Insureds" means Underwriters' Insureds who are individual persons, and Underwriters' Insureds that are an individual person's estate, but the term does not include the Receiver.

MEMORANDUM OPINION AND ORDER – PAGE 4

without affording them an alternative compensation scheme similar, if not identical to, the Receiver's claims process; (2) the Court erred by extinguishing Individual Underwriters' Insureds extracontractual claims, if any, against Underwriters; and (3) the Court should clarify whether the Bar Orders enjoin investors from pursuing claims against their Stanford brokers. *Sec. Exch. Comm'n v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 846–49 (5th Cir. 2019) [hereinafter *Lloyds*].[3]

Movants and Underwriters amended the original agreement by: (1) permitting Individual Underwriters' Insureds an opportunity to present a claim to the proceeds of the settlement through the Receiver's claims process; (2) exempting from the anti-suit injunction extracontractual claims, if any, by an Individual Underwriters' Insured; and (3) clarifying that the Bar Orders do not enjoin Stanford Investors from suing their Stanford brokers.  After the Receiver moved for Court approval of the amended settlement, HSBC Bank PLC ("HSBC") and Cordell Haymon objected.

## II.  THE LAW GOVERNING SETTLEMENT APPROVAL IN EQUITABLE RECEIVERSHIPS

The Court outlined the relevant legal standards related to administering an equity receivership in its prior order approving the original settlement agreement.  *See* May 16,

---

[3] In a similar case, the Fifth Circuit affirmed this Court's bar orders enjoining further Ponzi-scheme suits against other insurance brokers in exchange for approximately $132 million.  *See Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883, 901–02 (5th Cir. 2019) (distinguishing *Lloyds* based on the impact of claims on the receivership estate).  "*Lloyds* noted that the receiver may not bar investor claims that do not implicate the policy proceeds because such claims would not affect the receivership estate."  *Id.* at 902 n.75.  However, "[b]oth [*Lloyds* and *Zacarias*] affirm the receivership court's power to bar investors' claims for injuries they suffered as a direct result of the Ponzi scheme."  *Id.* at 902.

MEMORANDUM OPINION AND ORDER – PAGE 5

2017 Order 5–7 (Doc. 2518, Receivership Action).  "In general, the Receiver has wide powers to acquire, organize and distribute the property of the receivership." *Lloyds*, 927 F.3d at 840.  "Once assets have been placed in receivership, '[i]t is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership.'" *Id.* (citing *Safety Fin.*, 674 F.2d at 372–73).  The Fifth Circuit noted two limitations on the Stanford receivership.  First, "an equity receiver may sue *only to redress injuries to the entity in receivership*." *Id.* (emphasis in original) (citing *Scholes v. Lehmann*, 56 F.3d 750, 753 (7th Cir. 1995)).  Second, the Court may not exercise unbridled authority over assets belonging to third parties to which the Receivership Estate has no claim.  *Id.*  Specifically, "the receivership court cannot reach claims that are independent and non-derivative and that do not involve assets claimed by the receivership." *Zacarias*, 945 F.3d at 897 (citing *Lloyds*, 927 F.3d at 840).  However, as stated in *Lloyds* and affirmed in *Zacarias*, this Court has the authority to issue a bar order precluding claims for injuries suffered as a result of the Ponzi scheme. *Zacarias*, 945 F.3d at 902.

### III. THE COURT APPROVES THE PROPOSED SETTLEMENT AGREEMENT

The proposed amended settlement agreement is identical to the original agreement except in three respects: (1) it contemplates that some additional claimants, namely former Stanford employees, will be allowed to submit a claim to the settlement proceeds through the Receivership; (2) it limits the scope of the bar orders by excluding from them Individual Underwriters Insureds' extracontractual claims, if any; and (3) it clarifies that the bar orders do not prevent Stanford investors from suing their brokers.  Under the terms of the amended

agreement, Underwriters will pay $65 million to the Receivership Estate, which (less attorneys' fees and expenses) will be distributed to Stanford Investors with allowed claims or to Individual Underwriters' Insureds who have a non-released, non-waived contractual claim to the proceeds of the Policies and whose claims are allowed by the Receiver, subject to review by the Court. In return, Underwriters seek global peace with respect to claims against Underwriters except the extracontractual claims of Individual Underwriters' Insureds.

### A. *The Fifth Circuit Opinion*

The Fifth Circuit noted that Appellants' claims consist of contractual claims, payable from policy proceeds in competition with investors' claims to the Receivership assets, and independent, non-derivative, third-party claims for tort and statutory violations, payable from the Underwriters' assets. The Fifth Circuit held that this Court abused its discretion as to the contractual claims "by extinguishing Appellants' claims to the policy proceeds, while making no provision for them to access the proceeds through the Receiver's claims process." *Id.* Furthermore, because the Court did not distinguish between the contractual and extracontractual claims in its prior order, the Court abused its discretion in dismissing independent, extracontractual claims against Underwriters unrelated to the Receivership Estate.

The amended settlement agreement adequately addresses both concerns. First, the amended settlement allows Insureds to participate in the Receiver's claims process. *See* Second Am. Settlement Agreement 120 (Doc. 3005, Receivership Action) ("Outstanding Insurance Claims submitted on or before the Outstanding Insurance Claim Deadline shall

MEMORANDUM OPINION AND ORDER – PAGE 7

be subject to review and determination by the Receiver, whose determination shall be subject to Court review . . . .").  The Receiver notes that there are fewer than twenty Insureds who have not released their claims against Underwriters.  Second, the amended settlement does not bar extracontractual claims.  *See id.* at 121 ("The Parties intend this agreement to be and constitute a final, complete, and worldwide resolution of all matters and disputes between . . . Underwriters, on the one hand, and Individual Underwriters' Insureds, on the other hand, with respect to any *contractual* commitments . . . .") (emphasis added).

Finally, the Fifth Circuit noted that "[o]n remand, it would be appropriate for the district court to determine and clarify the meaning of the bar order as to the [Louisiana] Retirees, keeping in mind that the district court may not enjoin any claims by Retirees against the [Stanford] brokers that do not implicate the policy proceeds." *Lloyds*, 927 F.3d at 849.  The Court notes that the Louisiana Retirees did not file an objection to the proposed amended settlement agreement.  Regardless, the amended settlement agreement clarifies the bar orders, stating "that nothing in this Agreement or in the proposed Bar Orders . . . is intended to prohibit, nor shall it be construed to prohibit, any Stanford Investor from pursuing any claim against any former Stanford officer, director, or employee."  Second Am. Settlement Agreement 121 (Doc. 3005, Receivership Action).

The Court determines that the amended settlement agreement adequately addresses the Fifth Circuit's concerns with the original settlement.  The amended settlement allows for an alternate compensation scheme by allowing Insureds to participate within the Receiver's claims process subject to Court review, does not bar extracontractual claims

MEMORANDUM OPINION AND ORDER – PAGE 8

against the Underwriters, and does not bar claims against Stanford brokers.  Thus, the settlement agreement and bar orders fall squarely within the limits of this Court's power as outlined by the Fifth Circuit.  *See Zacarias*, 945 F.3d at 897 (holding that bar orders fell squarely within the receivership court's authority when the bar orders only precluded derivative and dependent claims that directly affected the receiver's assets and allowed objecting investors to participate in receivership process).

### B.  The Objections to the Settlement Are Unavailing

The motion to approve the settlement drew objections from HSBC and Cordell Haymon, a former Stanford director.  For the following reasons, the Court denies the objections.

*1.  Cordell Haymon's Objections.* – Cordell Haymon objects to the proposed settlement agreement on the follow grounds: (1) Haymon has the right to intervene in this proceeding prior to entry of any settlement or bar order; (2) the proposed judgments and bar orders precluding Insureds' contract claims are beyond the powers of the Receiver and the jurisdiction of the Court; (3) it is not fair, just, or equitable to require Insureds to pursue contract claims in one forum and extracontractual claims in another; (4) settlements that do not exhaust insurance policy proceeds are not the same as settlements that do exhaust policy proceeds; (5) Haymon's rights are harmed by the proposed settlement and bar orders, and the Fifth Circuit has instructed that Haymon's claims are "ripe for judicial determination" on this remand; (6) the Court should give no weight to Receiver's suggestion that settlement on the proposed terms is in any way necessary; (7) the requested

attorneys' fees are excessive and unwarranted, and unfair, unjust, and inequitable to all potential claimants to the Receivership Estate. The Court addresses each objection in turn.

First, the Fifth Circuit approved the prior settlement process, in which Haymon was not permitted to intervene but his objections to the settlement were considered. *Lloyds*, 927 F.3d at 849. In the context of the prior settlement, the Fifth Circuit held that Haymon received all the process he was due. *See id.* at 849 n.20 ("Haymon was afforded the opportunity, and availed himself of the ability to press his constitutional objections to the settlement and bar orders. There was no failure of due process and his other vaguely identified constitutional objections are meritless.").

Second, the proposed settlement and bar orders are not beyond the authority of the Court. The Fifth Circuit expressly stated that the "district court acted within its authority to bar Haymon's claim for contractual defense and indemnity under the insurance policy, but some alternate compensation mode from the estate is required, and the court could not bar his extracontractual claims against the Underwriters." Here, the proposed settlement and bar orders allow Haymon to participate in the Receiver's claims process and does not bar his extracontractual claims against the Underwriters.

Third, the Fifth Circuit expressly distinguished the Court's authority in resolving contractual and extracontractual claims in different forums. While Haymon claims that the Receiver's claims process does not offer a robust opportunity to litigate contractual claims, the Receiver's claims process is subject to this Court's review. Moreover, Haymon's claim that the Receiver's claims process does not contemplate an opportunity for a full recovery does not render the proposed settlement and bar orders inequitable. Rather, no claimants

MEMORANDUM OPINION AND ORDER – PAGE 10

are receiving a full recovery on their claims.  "The court's duty . . . is to assure that all claimants against the Receivership have a *reasonable* opportunity to share in the estate's assets."  *Lloyds*, 927 F.3d at 846 (emphasis added.)  "It is typical in cases involving a receivership imposed on a corporate defrauder that the resources of the receivership estate are insufficient to allow all the victims of the fraud to recoup their losses, as is the situation here."  *Sec. Exch. Comm'n v. Credit Bancorp*, *Ltd.*, No. 99 CIV. 11395 RWS, 2000 WL 1752979, at *14 (S.D.N.Y. Nov. 29, 2000).  As the Court previously held, "to treat [Haymon's] claim to the proceeds differently based on how he pursued the proceeds would give him an unfair priority over the other claimants to the Policies."  *See* May 16, 2017 Order (Doc. 2518, Receivership Action).

Fourth, the Receiver's alleged failure to exhaust insurance policy proceeds does not preclude settlement.  Rather, the amount of the policy proceeds is one of the central issues driving the proposed settlement.  As the Court stated in its prior Order approving the original settlement, the "settlement obtains a payment that represents at least a significant portion, if not more than, the available proceeds of the Policies."  *Id.*  Moreover, litigation of the issue of policy limits would dissipate receivership assets, involve a costly and protracted appeal, and directly risk the prospect of recovery to the detriment of the Receivership and the Stanford victims, particularly because the scope of coverage is unclear and will likely result in fierce litigation.  *See Zacarias*, 945 F.3d at 900–01.

Fifth, Haymon alleges that the Receiver's attempt at "double recovery" at Haymon's expense precludes settlement.  Haymon claims that "the Receiver has no power to compromise the contractual rights that Haymon relied upon as a Stanford director[.]

MEMORANDUM OPINION AND ORDER – PAGE 11

Haymon's Objections to Settlement and Bar Orders 14 (Doc. 3011, Receivership Action). Haymon relies, in part, on his 2015 Settlement with the Receiver, in which Haymon paid $2 million for the Receiver's release of claims against Haymon. However, the Fifth Circuit noted that, while "the final proposed settlement undid [Haymon's] expectations of recovery from the Underwriters," the "district court acted within its authority to bar Haymon's claim for contractual defense and indemnity under the insurance policies." *Lloyds*, 927 F.3d at 849. Simply put, the 2015 settlement does not preclude the Receiver from interfering with Haymon's pursuit of claims against the Underwriters. Rather, the 2015 settlement expressly states that "nothing . . . shall provide for the release of any claims . . . including . . . those asserted by the Receiver against Underwriters." *See* Stipulation and Settlement Agreement at 10–11 (Doc. 237-6, Case No. 3:09-cv-1736 (N.D. Tex.)). While the "ultimate evaluation of Haymon's claims may differ from" other claimants, this does not preclude the Court from requiring Haymon to pursue his contractual claims through the Receiver's claims process.

Sixth, Haymon disputes the necessity of the settlement terms, claiming that the Receiver and Underwriters have previously misrepresented the necessity of barring all claims, both contractual and extracontractual, against Underwriters. Haymon alleges that, because the Receiver and Underwriters have reached a new settlement with different terms, the Court cannot rely on the parties' statements that the terms of the settlement agreement are necessary. However, as noted by the Receiver, the circumstances behind the settlement agreement have changed, and any resulting changes to the proposed settlement and bar orders do not necessarily reflect a misrepresentation as to the necessity of the terms of the

MEMORANDUM OPINION AND ORDER – PAGE 12

settlement.  Moreover, the settlement and bar orders have been amended to incorporate guidance from the Fifth Circuit.  The bar orders were, and remain, necessary to effectuate a fair, reasonable, and equitable settlement in the best interests of the Receivership Estate.

Seventh, Haymon argues that the requested attorneys' fees are excessive and unwarranted, and unfair, unjust, and inequitable to all potential claimants to the Receivership Estate.  As the Fifth Circuit noted, Haymon did not object to the prior request for attorneys' fees.  Arguments that "could and should have been raised on the first appeal . . . [are] forfeited and may not be revisited by the district court on remand." *Dallas/Fort Worth Int'l Airport Bd. v. INET Airport Sys., Inc.*, 4:13-CV-753-A, 2017 WL 4221077, at *3 (N.D. Tex. Sept. 21, 2017).  Regardless, as the Court previously noted in its original order granting attorneys' fees, the percentage charged by Kuckelman Torline is less than the percentage charged and approved by courts in other cases of this magnitude and complexity.  *See* May 16, 2017 Order (Doc. 2521, Receivership Action).  The Court determined that the requested attorneys' fees were reasonable when analyzed under the common fund approach, the *Johnson* framework, or both.  *Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

After considering Haymon's arguments, the Court overrules his objections.  The amended settlement agreement and bar orders are necessary to effectuate a fair, reasonable, and equitable settlement that is in the best interests of the Receivership Estate.  Moreover, the settlement is not unfair or unjust as to Haymon.  First, the settlement expressly provides him with the ability to submit his contractual claims to the Receiver's claims process.  Furthermore, the claims process is itself subject to this Court's review.  Second, Haymon

MEMORANDUM OPINION AND ORDER – PAGE 13

may proceed with his extracontractual claims against Underwriters.  While Haymon may be dissatisfied with the ultimate amount recovered through the Receiver's claims process, the nature of equity receiverships is that "the resources of the receivership estate are insufficient."  *Credit Bancorp*, 2000 WL 1752979, at *14.

   **2.  *HSBC's Objections.* –** HSBC argues that the proposed settlement and bar orders would impair HSBC's contribution rights against responsible third parties.  HSBC requests either that (1) the provisions of the proposed bar orders that would "destroy HSBC's contribution rights be deleted" or (2) the bar orders expressly makes elimination of HSBC's contribution rights contingent on Chapter 33's application to the TSA.  Because the proposed settlement and bar orders do not impair HSBC's rights, the Court overrules the objection.

   HSBC contends that the proposed settlement and bar orders would expressly destroy HSBC's contribution rights.  Under the terms of the proposed settlement and bar orders, claims, including claims for contribution, are enjoined against only Underwriters and Underwriters Released Parties.  HSBC does not state that it seeks contribution against Underwriters or Underwriters Released Parties.  Rather, "HSBC seeks to designate one or more of the individuals identified in Exhibit A as responsible third parties."  Thus, HSBC's right to pursue contribution claims would be impaired if the alleged responsible third parties in Exhibit A are construed as released parties.  However, the amended settlement expressly states that "neither 'Underwriters' nor 'Underwriters Released Parties shall be construed to include any of the Persons identified on Exhibit A . . . ."  App. 14 (Doc. 3005, Receivership Action).

MEMORANDUM OPINION AND ORDER – PAGE 14

Thus, nothing in the amended settlement agreement limits HSBC's ability to pursue claims against anyone other than Underwriters and Underwriters Released Parties.  While HSBC contends that it seeks to designate one or more individuals identified in Exhibit A of the agreement as responsible third parties, nothing in the amended settlement prohibits HSBC from doing so.  Rather, the amended settlement merely states that "*the Receiver and the Committee* each agree to dismiss, pursuant to this Agreement, their respective claims against the individuals identified in Exhibit A."  App. 21 (Doc. 3005, Receivership Action) (emphasis added).  Because the proposed settlement and bar order does not impair HSBC's rights, the Court overrules HSBC's objection.

## IV.  THE COURT APPROVES ATTORNEYS' FEES

The Court previously approved a $14 million fee to Receiver's counsel, Kuckelman Torline Kirkland & Lewis ("Kuckelman Torline") for its work on the Lloyd's settlement and $100,000 to Movants' Counsel in litigation against Claude Reynaud.  The Fifth Circuit vacated the Court's approval of the original agreement and remanded the case for further proceedings.

As the Court noted in its original order, the percentage charged by Kuckelman Torline is less than the percentage charged and approved by courts in other cases of this magnitude and complexity.  *See* May 16, 2017 Order (Doc. 2521, Receivership Action).  The Court determined that the requested attorneys' fees were reasonable when analyzed under the common fund approach, the *Johnson* framework, or both.  *Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).  While the Fifth Circuit noted that the Receiver's fee request was "very high," the issues presented in the insurance litigation were

MEMORANDUM OPINION AND ORDER – PAGE 15

novel, difficult, and complex.  Moreover, the fee request was well below the typical market rate contingency fee in cases of similar complexity and magnitude, and below the contingency fees previously approved as reasonable by this Court for other counsel representing the Receiver.  For these reasons, the Court confirms its prior approval of payment of attorneys' fees in the amount of $14 million to Kuckelman Torline (Doc. 2521, Receivership Action).  The Receiver is, therefore, ordered to pay Kukelman Torline Kirkland & Lewis attorneys' fees in the amount of $14 million upon receipt of the Settlement Amount in accordance with the terms of the Insurance Settlement Agreement.

The Court also confirms its prior award of $100,000 of attorneys' fees to Movants' counsel in the Reynaud litigation for the reasons set forth in the Court's Order Approving Attorneys' Fees in the Breazeale, Sachse & Wilson, LLP litigation (Doc. 2231, Receivership Action).  The Receiver is, therefore, ordered to pay Movants' counsel in the Reynaud litigation attorneys' fees in the amount of $100,000 upon receipt of the Settlement Amount.

## CONCLUSION

Because the amended settlement agreement is fair, reasonable, and adequately addresses the Fifth Circuit's opinion regarding the original settlement, the Court approves the amended settlement agreement.  The Court confirms its prior approval of payment of attorneys' fees to Movants' counsel.

Signed January 25, 2021.

David C. Godbey
United States District Judge